UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| FRANK LAWSHEA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:07-CV-86 SNLJ |
| ) | |
| PAULA PHILLIPS, et al., ) | |
| ) | |
| Defendants. ) | |

## AMENDED MEMORANDUM AND ORDER

Plaintiff Frank Lawshea filed this 42 U.S.C. § 1983 claim against defendants Paula Phillips, Timothy Holsten, Curt Curtis, Thomas Waldrup, and Keith Mays, who are or were employees of the Southeastern Correctional Center, where the plaintiff was at one time incarcerated. Plaintiff was granted leave to proceed *in forma pauperis*, and counsel has been appointed for him. Defendants Phillips, Holsten, Waldrup, and Mays filed a motion for summary judgment on August 10, 2010 (#88). Responsive pleadings have been filed, and the matter is now ripe for disposition.

**I. Case Summary**

This is a Section 1983 action in which plaintiff alleges that defendants (1) violated his right to due process under the Fourth and Fourteen Amendments of the United States Constitution and deprived him of liberty and property by fining plaintiff and placing plaintiff in administrative segregation without adequate cause; (2) retaliated against plaintiff for his reporting defendants Phillips and Holsten to various public officials, thereby violating plaintiff's First, Fourth, Eighth, and Fourteenth Amendment rights; (3) used excessive force against plaintiff by ordering or participating in spraying him with pepper spray without justification or

excuse in violation of plaintiff's Eighth Amendment rights; and (4) violated plaintiff's Eighth Amendment rights by causing him to live in unfit prison conditions and denying medical care.

Plaintiff, formerly an inmate at the Southeast Correctional Center ("SECC") in Charleston, Missouri, is now an inmate confined at the Jefferson City Correctional Center in Cole County, Missouri. Defendant Paula Phillips was a function unit manager at the SECC with supervisory authority. Defendant Timothy Holsten was a caseworker at the SECC. Defendant Curt Curtis was a sergeant at the SECC. Defendant Thomas Waldrup was a lieutenant at the SECC. Finally, defendant Keith Mays was a function unit manager at the SECC with control over the condition of plaintiff's cell and plaintiff's access to medical care.

The following facts are uncontested:

Plaintiff was confined at SECC from approximately May 2006 until September 2006. Each of the defendants was employed at the SECC in 2006. On or about May 16, 2006, defendant Holsten asked plaintiff where plaintiff's jumpsuit was located, and plaintiff told Holsten that he had returned the jumpsuit to the officers' desk in the housing unit. Plaintiff testified that Holsten referred to the jumpsuit as a "nigger suit." Holsten advised plaintiff that a new rule required that plaintiff return the jumpsuit to Holsten at the classification office, and Holsten gave plaintiff two days to locate the jumpsuit or else Holsten would issue plaintiff a violation. Plaintiff had never heard of that rule before. Plaintiff failed to return the jumpsuit to Holsten (although plaintiff maintains he had returned the jumpsuit to the officers' desk), and he was charged $29.60 and given 10 days cell restriction. On July 25, 2006, plaintiff was escorted to administrative segregation without being informed of why he was being punished or investigated.

The "cell restriction" plaintiff was put on meant that he was restricted to his cell other than to leave for breakfast, lunch, and dinner. The $29.60 was taken from plaintiff's prison account.

Plaintiff wrote several letters to prison officials, state officials, and the county prosecuting attorney complaining about the actions of defendants Phillips and Holsten. The letters were returned to him with defendant Phillips's handwriting on them. It is SECC's policy that if a letter sent to a public official is returned to SECC, it goes to the Warden's office. If the letter does not warrant an investigation, it is forwarded to the Functional Unit Manager for a response. Defendant Phillips, as Functional Unit Manager, thus answers correspondence to public or prison officials that they forward to her.

Plaintiff also filed a grievance related to the jumpsuit matter. At the hearing on that grievance, plaintiff alleges that defendant Phillips did not give plaintiff the opportunity to present evidence. Plaintiff testified that a team officer, Dale Phillips, refused (1) to allow plaintiff to examine any footage from the video camera at the officers' desk to see if it showed him returning the jumpsuit, and (2) to allow plaintiff to have an officer testify on his behalf about the incident. Plaintiff and defendants disagree on whether defendant Phillips, who may have been standing in the hallway outside the hearing room, heard Dale Phillips refuse to allow plaintiff to investigate and/or present evidence.

On July 29, 2006, plaintiff received notice that a hearing would take place on August 1, 2006 regarding his placement in administrative segregation. Plaintiff decided not to attend that hearing and instead submitted a written statement because he believed it related to a fight he had witnessed in the prison yard. Plaintiff later received notice that another hearing would take place on August 29, 2006. He again declined to attend the hearing and instead submitted a written

statement because he was not comfortable attending the hearing with no knowledge of what it was about.

Both hearings resulted in plaintiff being held in administrative segregation for 110 days. Unlike conditions in the general population, inmates in administrative segregation (1) can only leave their cell for recreation time in a cage and for shower, (2) are kept in chains and handcuffs anytime they leave their cell, (3) are not alleged to congregate with other inmates, (4) do not have access to yard activities, (5) cannot have electronics, (6) can not have contact visits, (7) have a lower canteen limit, and (8) have fewer library privileges.

On September 1, 2006, defendant Waldrup came to plaintiff's cell at 4:30 a.m. and informed plaintiff that he would be getting a new cellmate. Plaintiff objected for the reason that he did not get along with that particular inmate, who was known as a "biter." Waldrup then left, and his subordinate, defendant Curtis, returned 12 minutes later and sprayed plaintiff with pepper spray through the food port of his door. Waldrup authorized Curtis to use the pepper spray on plaintiff. When plaintiff was removed from the cell, plaintiff saw Waldrup watching from the "control bubble," which had a clear view of the cell.

Although not set out in his statement of facts, plaintiff states in his complaint and in his memorandum that his cell was not cleaned of the residue of the pepper spray for months. As a result, he says he experienced a variety of medical problems, including chest pains, shortness of breath, and problems with his lungs, heart and kidneys. Plaintiff repeatedly requested medical attention, and, although he was seen by medical personnel on six occasions in the three months after the incident, the defendants do not dispute for purposes of summary judgment that plaintiff did not receive adequate medical care, and that the nurses ignored and laughed at his complaints.

Although plaintiff saw a nurse on the day of the pepper spray incident, he did not see medical personnel again for a month, despite frequently requesting medical attention.

## II. Summary Judgment Standard

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. *New England Mut. Life Ins. Co. v. Null*, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." *Mt. Pleasant v. Associated Elec. Coop. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988).

Pursuant to Fed.R.Civ.P. 59(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *Mt. Pleasant*, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir.

1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976). With these principles in mind, the Court turns to the discussion.

## III. Discussion

The defendants' motion seeks partial or complete summary judgment on each of plaintiff's four counts.

### A. Due Process Claims Against Phillips, Holsten, and Mays (Count I)

Defendants seek complete summary judgment on Count I, which is a due process claim against defendants Phillips, Holsten, and Mays. Plaintiff claims he was not given proper notice of hearings, that his efforts to communicate his complaints to officials were tampered with, and that he was not allowed to present testimony and evidence at those hearings, and, as a result of those due process violations, he was deprived of liberty and property.

#### 1. Due Process Claims' Constitutional Deprivations

"In order to prevail on a Fourteenth Amendment due process claim, [the plaintiff] must first demonstrate that he was deprived of life, liberty, or property by government action." *Phillips v. Norris,* 320 F.3d 844, 846 (8th Cir. 2003).

Plaintiff's alleged liberty deprivation was his 110-day confinement in administrative segregation. To show he was deprived of a protected liberty interest, plaintiff must show that his confinement in administrative segregation imposed "atypical or significant hardship ... in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484 (1995). "In order to determine whether an inmate possesses a liberty interest, we compare the conditions to which the inmate was exposed in segregation with those he or she could expect to experience as an ordinary

6

incident of prison life." *Phillips,* 320 F.3d at 847 (internal quotations omitted); *see also Orr v. Larkins*, 610 F.3d 1032, 1034 (8th Cir. 2010).

It is undisputed that, unlike conditions in the general population, inmates in administrative segregation (1) can only leave their cell for recreation time in a cage and for showering, (2) are kept in chains and handcuffs anytime they leave their cell, (3) are not allowed to congregate with other inmates, (4) do not have access to yard activities, (5) cannot have electronics, (6) can not have contact visits, (7) have a lower canteen limit, and (8) have fewer library privileges. These conditions, however, are not "atypical or significant hardships" in comparison to ordinary prison such that they that give rise to a liberty deprivation. In *Phillips*, for example, the plaintiff asserted that three conditions of his segregation constituted an atypical and significant hardship: no contact visitation, no exercise privileges, and no chapel rights. The Court of Appeals held that none of those three limitations for the prisoner's 37-day term of segregation constituted an atypical and significant hardship. 320 F.3d at 847. Similarly, Courts of Appeal have found no liberty interest implicated by administrative segregation where inmates are not afforded outdoor recreation or religious or educational services for six months. *Beverati v. Smith*, 120 F.3d 500 (4th Cir. 1997) (cited with approval by *Phillips*, 320 F.3d at 847). Thus, plaintiff's 110-day confinement in administrative segregation does not trigger Constitutional due process protection.

Plaintiff also claims he was deprived of a property interest: the $29.60 that was deducted from his prison account. While inmates have no Constitutionally protected interest in their wages earned while in prison, "[i]nmates have a property interest in money received from outside sources." *Mahers v. Halford*, 76 F.3d 951, 954 (8th Cir. 1996). The defendants' statement of facts indicates that the $29.60 was taken from plaintiff's prison account, "which consisted of

7

funds from a state allowance, prison earnings, and gifts from family and friends." (#97-1 at ¶ 13.) However, plaintiff's testimony, which is cited in support of that fact, describes the general content of prison accounts rather than the contents of his specific prison account (Lawshea Dep. at 32), and plaintiff does not contend, much less offer any proof in the form of affidavits or account statements, that his prison account at the time of the $29.60 deduction actually contained funds gifted from family or friends. Rather, plaintiff's and defendants' briefs focus on plaintiff's receipt of a state-provided allowance and prisoner earnings, which are not a Constitutionally protected interest. As a result, the taking of money from that account does not implicate a property interest.

### 2. Due Process Claims Against Defendant Mays

Having determined that plaintiff was not deprived of a liberty or property interest as a result of the alleged due process violation, the Court need not proceed further with plaintiff's due process claims. However, even if there had been some Constitutional deprivation, plaintiff's due process claim against defendant Mays would fail because plaintiff chose not to attend the hearings for which he was given notice.

Plaintiff has alleged that defendant Mays did not give plaintiff adequate notice of the nature of the first hearing and that he conducted a second hearing without requesting plaintiff's presence. Defendant Mays contends that plaintiff was given notice, that plaintiff chose not to attend the hearings, and that plaintiff cannot prove he was prejudiced by any inadequate notice.

Generally, inmates are owed only the "minimum procedures appropriate under the circumstances." *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974). In a prison disciplinary proceeding, the prisoner must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, consistent with correctional goals and safety, to call witnesses and present a

8

defense; and (3) a written statement of the evidence relied upon by the fact finder and the reasons for the disciplinary action. *Superintendent v. Hill*, 472 U.S. 445, 454 (1985). The written notice must be adequate to enable the accused prisoner to "marshal the facts and prepare a defense." *Wolff*, 418 U.S. at 564; *see also Dible v. Scholl*, 506 F.3d 1106, 1110 (8th Cir. 2007).

Plaintiff states that the hearing notices told him only that he was "scheduled for hearing." However, plaintiff clearly knew that disciplinary hearings had been scheduled, but he deliberately chose not to appear at the hearings, where he could have objected to any alleged inadequate notice and requested additional information and a continuance. *See Birdwell v. Hazelwood School Dist.*, 491 F.2d 490, 495 (8th Cir. 1974) (finding waiver where plaintiff chose not to attend hearing). Plaintiff, who had full knowledge that a hearing existed for the purpose of disciplinary proceedings, twice sat on his rights and opted not to attend either hearing for which he was given notice.

Summary judgment will therefore be granted to defendant Mays.

### 3. Due Process Claims Against Defendants Phillips and Holsten

Plaintiff alleges that defendant Phillips denied plaintiff the opportunity to present evidence at disciplinary hearings and intercepted letters plaintiff sent to public officials in which he complained about the actions of defendants Phillips and Holsten. Plaintiff alleges that Holsten was also involved in various due process violations. Because this Court has determined that plaintiff was not deprived of a liberty or property interest as a result of the alleged violations, the Court will grant summary judgment to defendants Phillips and Holsten.

### B. Retaliation Claims Against Phillips and Holsten (Count II)

Plaintiff has brought retaliation claims against defendant Phillips and Holsten, and both defendants seek summary judgment. To prove his claim of retaliatory discipline, plaintiff must show that "(1) the prisoner exercised a constitutionally protected right; (2) prison officials disciplined the prisoner; and (3) exercising the right was the motivation for the discipline." *Haynes v. Stephenson*, 588 F.3d 1152, 1155 (8th Cir. 2009) (quoting *Meuir v. Greene County Jail Employees,* 487 F.3d 1115, 1119 (8th Cir. 2007)).

Plaintiff claims that defendants Phillips and Holsten placed him in administrative segregation in retaliation for plaintiff's sending public officials letters in which he complained about them. Defendants do not contend that such conduct is not constitutionally protected; indeed, it is similar to filing a prison grievance or filing an inmate lawsuit, both of which are protected First Amendment activities. *See Haynes*, 588 F.3d at 1155-56.

Defendants also do not dispute that they placed plaintiff in cell restriction and administrative segregation, but they claim they were not motivated by plaintiff's sending letters to officials about their conduct. Plaintiff states that after sending the letters to public officials, the letters were returned to him by defendant Phillips, he was repeatedly written violations by defendants Phillips and Holsten, and he was placed in administrative segregation. Before plaintiff sent the letters, he had received only two violations. Plaintiff argues that a fact finder could conclude that the sudden change in disciplinary action against Plaintiff — along with defendant Holsten's alleged use of a racial slur in May 2006 — meant that the defendants' disciplinary actions against plaintiff were causally related to his protected activity of writing to public officials. Additionally, plaintiff indicates that before he sent letters to prison and elected

officials complaining about the actions of defendants Phillips and Holsten, he had received only two violations in the preceding three years for sleeping during inmate counts.

Plaintiff was escorted to administrative segregation on July 25, 2006, and he testified that defendant Holsten laughed as plaintiff was escorted. Plaintiff also testified that he was being "constantly harassed" by Holsten and Phillips, and that he was not told why he was being punished or investigated. But plaintiff also testified that he believed he was placed in administrative segregation because of a fight in the prison yard, suggesting he did know why he was placed in administrative segregation.

Defendants Phillips and Holsten have testified that they did not place plaintiff in administrative segregation or cell restriction because of any contacts plaintiff made with public officials. They maintain that their motive for taking those actions was not retaliatory. Plaintiff, as the nonmoving party, bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *See Anderson*, 477 U.S. at 249. Here, plaintiff must show that but for a retaliatory motive, he would not have been punished. *Haynes*, 588 F.3d at 1156. That he had not been previously written violations and that Holsten laughed as he was brought to administrative segregation — without more — does not provide enough evidence of a retaliatory motive to survive summary judgment. Indeed, plaintiff admits that Holsten warned that he would write plaintiff a violation unless plaintiff returned the jumpsuit to Holsten, and that Holsten gave plaintiff cell restriction and charged a fine to replace the jumpsuit. (#95 at ¶¶ 9, 11.) Thus, it seems that plaintiff was issued a violation and punished (whether warranted or not) because plaintiff had not returned the jumpsuit, not because plaintiff had complained about Holsten and Phillips's actions. Given plaintiff's failure to provide more of a connection between plaintiff's sending letters to officials and his placement

11

in administrative segregation (which appears to have happened two months after he sent the letters), summary judgment will be granted to defendants Holsten and Phillips on Count II.

### C. Excessive Force Claims Against Phillips, Holsten, and Waldrup (Count III)

Plaintiff has brought excessive force claims against defendants Phillips, Holsten, Curtis, and Waldrup. Defendants seek summary judgment on this claim for defendants Phillips, Holsten, and Waldrup.

#### 1. Excessive Force Claims Against Phillips and Holsten

Defendants argue that summary judgment on this claim is warranted for defendants Phillips and Holsten because they were not in any way involved in pepper spraying the plaintiff. Plaintiff does not address this argument at all in his brief, and he admits in his response to the defendants' statement of undisputed material facts that they were neither present for nor even working in the same unit at the time of the pepper spray incident. Summary judgment will therefore be granted to defendants Phillips and Holsten on Count III.

#### 2. Excessive Force Claim Against Defendant Waldrup

Defendant Waldrup argues that because he did not pepper spray the plaintiff, he is entitled to summary judgment. Plaintiff claims that while defendant Curt Curtis actually applied the pepper spray to plaintiff and his cell, Waldrup was Curtis's supervisor, Waldrup authorized the spraying, and thus Waldrup is liable for Curtis's use of excessive force. Plaintiff also states that Waldrup was able to watch the pepper spraying incident from the "control bubble."

For a supervisor to be held liable under Section 1983 for conduct of his subordinate, "he must have participated to some extent in that conduct, and known about and facilitated the conduct, approved it, condoned it, or turned a blind eye for fear of what others might see. ... In

other words, he must have acted either knowingly or with deliberate, reckless indifference". *Angarita v. St. Louis County*, 981 F.2d 1537, 1545 (8th Cir. 1992) (internal citations omitted). Defendant does not dispute for summary judgment purposes that Waldrup authorized the pepper spraying and that Waldrup was Curtis's supervisor. There is a dispute over whether Waldrup actually supervised or watched the spraying incident occur. Here, plaintiff has shown that there is at least a question of fact with respect to Waldrup's liability as to Count III, and summary judgment will be denied.

### D. Unfit Prison Conditions Claims Against Phillips and Mays (Count IV)

Count IV, unfit prison conditions, pertains to two results of the pepper spray incident: (1) plaintiff's being kept in a cell that was contaminated with pepper spray for months, and (2) plaintiff's allegedly being denied medical treatment for conditions related to his exposure to pepper spray. Plaintiff brings those claims against defendants Phillips and Mays. Defendant Phillips seeks complete summary judgment with respect to this count. Defendant Mays seeks summary judgment with respect to the claim that he failed to arrange for adequate medical care.

#### 1. Defendant Phillips

Plaintiff does not dispute that defendant Phillips did not have control of plaintiff's access to health care or control over the condition of his cell. Thus, summary judgment will be granted to defendant Phillips on Count IV.

#### 2. Defendant Mays

Defendant Mays does not address plaintiff's claims regarding plaintiff's cell condition. Rather, Mays focuses on plaintiff's alleged failure to receive adequate medical care after he was sprayed with pepper spray by defendant Curtis.

13

The Eighth Amendment prohibition on cruel and unusual punishment extends to protect prisoners from "deliberate indifference" to serious medical needs. *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009). "Deliberate indifference has both an objective and a subjective component." *Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006). The objective component requires a plaintiff to demonstrate an objectively serious medical need. *Grayson v. Ross*, 454 F.3d 802, 808-09 (8th Cir. 2006). A "serious medical need" is one "that has been diagnosed by a physician as requiring treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d. 778, 784 (quoting *Camberos v. Branstad*, 73 F.3d. 174, 176 (8th Cir. 1995)); *see also Simmons v. Cook*, 154 F.3d. 805, 807-08 (8th Cir. 1997) (quoting *Moore v. Jackson*, 123 F.3d. 1082, 1086 (8th Cir. 1997)("A medical need is serious if it is obvious to the layperson or supported by medical evidence.")).

In order to satisfy the subjective component of an Eighth Amendment medical claim, a plaintiff inmate must show that the prison officials knew of, yet deliberately disregarded, an excessive risk to the inmate's health. *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (quoting *Logan v. Clarke*, 119 F.3d. 647, 649 (8th Cir. 1997)). A prison official may be liable under the Eighth Amendment if she knows that an inmate faces a substantial risk of serious harm and fails "to take reasonable measures to abate it." *Coleman*, 114 F.3d. at 785 (citing *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)). The plaintiff must establish a "mental state akin to criminal recklessness." *Vaughn v. Gray*, at 908 (quoting *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006). Moreover, to create an actionable Eighth Amendment violation for delay in treatment, "the information available to the prison official must be such that a reasonable person would know that the inmate requires medical attention, or the prison official's actions (or inaction) must be so dangerous to the health or safety of the inmate that the official can be presumed to have

knowledge of a risk to the inmate." *Plemmons v. Roberts*, 439 F.3d 818, 823 (8th Cir. 2006). Delay must be prompted by "obduracy and wantonness, not inadvertence or error in good faith," before liability may be imposed. *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

It is undisputed that defendant Mays had control over plaintiff's access to medical care; that plaintiff experienced a variety of medical problems following the pepper spray incident including chest pains, shortness of breath, and problems with his lungs, heart, and kidneys; that plaintiff did not receive adequate medical care; and that the nurses ignored his complaints and even laughed at him. (#96 at ¶¶ 23-26; #97-1.)

Neither party provides case law addressing whether injuries from being pepper sprayed can be considered an objectively serious medical need. Chest pains, shortness of breath, and problems with one's lungs, heart, and kidneys, particularly when viewed in the light most favorable to plaintiff's case, are symptoms that "even a lay person would easily recognize the necessity for a doctor's attention." *Coleman*, 114 F.3d. at 784. Additionally, defendant Mays does not appear to contest the seriousness of plaintiff's medical condition.

Mays argues that he can only be held liable for the failure to provide access to medical care, and that, because plaintiff was seen by medical staff on six occasions in the three months that followed the pepper spray incident, he was indubitably not deliberately indifferent to plaintiff's medical needs. But Mays does not dispute for the purposes of summary judgment that the plaintiff did not receive adequate medical care, that nurses ignored plaintiff's complaints, and that the nurses laughed at plaintiff. (#96 at ¶ 26, #97-1.) Mays also does not dispute that plaintiff did not see a nurse for over a month after the first nurse visit the day of the pepper spraying. (#96 at ¶ 33, 97-1.)

Plaintiff seeks to hold defendant Mays responsible for his inadequate care, even though Mays was not a medical care provider. Mays's theory is apparently that it was the nurses — not Mays — who ignored plaintiff's complaints and laughed as they walked away. However, "[d]eliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). The fact that defendant Mays may have known plaintiff received inadequate medical care, combined with the one-month delay in receiving medical care while plaintiff's condition worsened as he was kept in the pepper-spray-contaminated cell, when viewed in a light most favorable to plaintiff, creates an issue of fact as to whether defendant Mays was deliberately indifferent to plaintiff's serious medical needs. As a result, summary judgment will be denied as to defendant Mays on Count IV.

### E. Qualified Immunity Defense by Mays, Phillips, and Holsten

Defendants Mays, Phillips, and Holsten have requested that the Court grant them qualified immunity with regard to plaintiff's due process, excessive force, and unfit prison conditions claims. "Qualified immunity is a defense available to government officials if they have not violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Amrine v. Brooks*, 522 F.3d 823, 831 (8th Cir. 2008) (quoting *Young v. Selk*, 508 F.3d 868, 871 (8th Cir.2007); *see Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It "allows officers to make reasonable errors so that they do not always 'err on the side of caution' " for fear of being sued. *Habiger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir. 1996) (citation omitted); *see Davis v. Scherer*, 468 U.S. 183, 196 (1984). "This defense provides 'ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who

knowingly violate the law.'" *Amrine*, 522 F.3d at 831 (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)).

Qualified immunity determinations are based on a two-part inquiry. First, the court determines whether the alleged facts, viewed in the light most favorable to the injured party, demonstrate that the official's conduct violated a constitutional right. *Amrine*, 522 F.3d at 831; *see also Saucier v. Katz,* 533 U.S. 194, 201 (2001). Second, if the answer to that inquiry is yes, the court asks whether the constitutional right was clearly established at the time so that a reasonable officer would have understood that his conduct violated that right. *Amrine*, 522 F.3d at 831.

As already discussed, the Court is granting summary judgment to defendants on Count I (due process). However, plaintiff's rights to have his serious medical conditions treated without intentional delay, and to be free from use of excessive force, have been clearly established. As a result, qualified immunity is not warranted for the defendants.

## IV. Conclusion

Summary judgment will be granted to defendants Phillips, Holsten, and Mays on Count I, to defendants Phillips and Holsten on Count II, to defendants Phillips and Holsten on Count III, and to defendant Phillips on Count IV. Remaining for trial in this matter are Count III (Excessive Force) as to defendants Waldrup and Curtis, and Count IV (Unfit Prison Conditions) as to defendant Mays.

Accordingly,

**IT IS THEREFORE ORDERED** that defendants Paula Phillips, Timothy Holsten, Thomas Waldrup, and Keith Mays's Motion for Partial Summary Judgment is DENIED in part and GRANTED in part.

**IT IS FURTHER ORDERED** that summary judgment as to Count I is GRANTED for defendants Paula Phillips, Keith Mays, and Timothy Holsten .

**IT IS FURTHER ORDERED** that summary judgment as to Count II is GRANTED for defendants Paula Phillips and Timothy Holsten.

**IT IS FURTHER ORDERED** that summary judgment as to Count III is GRANTED for defendants Paula Phillips and Timothy Holsten. Summary judgment as to Count III is DENIED as to defendant Thomas Waldrup.

**IT IS FINALLY ORDERED** that summary judgment as to Count IV is GRANTED for defendant Paula Phillips. Summary judgment as to Count IV is DENIED as to defendant Keith Mays

Dated this  7th  day of December, 2010.

_____
UNITED STATES DISTRICT JUDGE